

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

**DAVID W. HERCHER**
BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1538

**COLLIN M. COLE**
LAW CLERK

**DORIA D. ARNTSEN**
JUDICIAL ASSISTANT

July 3, 2018

NOT FOR PUBLICATION

Jeanne E. Huffman
Via ECF only

Carlton Bradley Geffken
345 Westfield St #102
Silverton, OR 97381

Subject: In re Carlton Bradley Geffken
Case No. 17-62389-dwh7

Greetings:

On May 3, 2018, I held an evidentiary hearing in this case to consider five motions, one by debtor, Carlton Bradley Geffken, and four by the chapter 7 trustee, Jeanne E. Huffman. His is the Debtor's Application to Have the Chapter 7 Filing Fee Waived;[1] hers are (1) the Trustee's Motion to Dismiss Case Reason: Debtor failed to complete the Meeting of Creditors[2] (first dismissal motion), (2) the Trustee's Motion to Dismiss Case Reason: Failure to provide tax returns[3] (second dismissal motion), (3) the Motion to Dismiss Case Reason: Failure to provide tax returns Filed by Trustee Jeanne E. Huffman[4] (third dismissal motion), and (4) the Trustee's Fourth Motion to Dismiss Case Reason: Failure to obey Turn Over Order[5] (fourth dismissal motion).

I will deny the fee-waiver application and the motions to dismiss. This letter constitutes my findings of fact and conclusions of law.

---

[1] Docket item 5.
[2] Docket item 22.
[3] Docket item 25.
[4] Docket item 57.
[5] Docket item 61.

I.   **Facts**

   A.   *Meeting of creditors*

Geffken filed his chapter 7 petition initiating this case on August 4, 2017.[6] The meeting of creditors was initially set for September 7, 2017.[7]

On September 7, the court received his letter requesting that the meeting be rescheduled due to a previously scheduled dental procedure, claiming that he didn't receive the mailed notice of bankruptcy and learned of the September 7 setting of the meeting only when the trustee phoned him on September 4 to discuss preparation for it.[8] I granted that motion, resetting it to September 22.[9]

On September 26, at the trustee's request, the court docketed continuance of the meeting of creditors to October 20, 2017.[10] According to the second dismissal motion, Geffken didn't attend the October 20 meeting, and instead he left her a voice-mail message the prior day stating that he had disturbing news about the meeting, and he emailed her on October 20 stating that he had strep throat and would not be attending the meeting or taking phone calls; she did not hear the voice-mail message or read the email until she returned to her office on October 23.[11] On December 12, 2017, the meeting was continued in the same fashion to January 12, 2018.[12]

On January 8, the court reset the meeting to January 25.[13]

On February 5, 2018, at the trustee's request, the court docketed continuance of the meeting of creditors to March 9, 2018.[14] On March 16, in the same fashion, the meeting was continued to April 20, 2018.[15]

   B.   *Geffken's filing-fee-waiver application*

On the petition date, August 4, Geffken filed his filing-fee-waiver application. I set an initial telephone hearing on the application for October 17.[16] Notice of that hearing was mailed to him.[17] He didn't participate in that hearing, so I continued it to November 7, 2017.[18] He did participate in the November hearing, when I took the application under advisement while I considered the trustee's motions.[19]

---

[6] Docket item 2.
[7] Docket items 1, 7.
[8] Docket item 15.
[9] Docket item 16.
[10] Docket item 19.
[11] Docket item 25.
[12] Docket item 46.
[13] Docket item 47.
[14] Docket item 55.
[15] Docket item 60.
[16] Docket item 14.
[17] Docket item 17.
[18] Docket item 20.
[19] Docket item 33.

Jeanne E. Huffman
Carlton Bradley Geffken
July 3, 2018
Page 3

In the trustee's fourth motion to dismiss, she urged denial of the fee-waiver motion because, she asserts, Geffken hadn't substantiated his financial representations required for a waiver.

### C. The trustee's three motions to dismiss

#### 1. The first dismissal motion

On October 23, at the trustee's request, the clerk filed and mailed to the first dismissal motion. The motion itself is captioned "Notice of Proposed Dismissal of Case," and the docket describes the motion as "Motion to Dismiss Case and Notice Thereon. Reason: Debtor[s] failed to complete the Meeting of Creditors. Filed by Trustee Jeanne E Huffman" The motion recited that "Debtor(s) failed to complete the Meeting of Creditors" and it stated that the case could be dismissed absent objection filed within 21 days.

I set an initial telephone hearing on the first dismissal motion for November 29.[20] I considered argument on the first dismissal motion at the November 29 hearing[21] and at further hearings on December 6,[22] January 30,[23] and March 20.[24] At the December 6 hearing, I noted that the trustee had reset the meeting of creditors for January 12.[25] On January 30, I noted that the trustee had further reset the meeting for March 9.[26]

As a result of the March 20 hearing, I set an evidentiary hearing for May 3, 2018, on all outstanding motions, including the first dismissal motion.[27] At the May 3 hearing, I heard argument and evidence on all outstanding motions, including the first dismissal motion, and I took them under advisement.[28]

#### 2. The second dismissal motion

On October 23, the trustee filed her second motion to dismiss for Geffken's failure to provide her with copies of his most recently filed tax return. According to her, she requested by telephone on September 6 and 18, orally at the meeting of creditors on September 22, and in writing on September 26. At the September 22 meeting, she requested copies of all tax returns filed since 2008—the year of the return that had most recently been filed as of the petition date— and bank statements for July and August 2017 to the petition date, August 4. On October 5, he provided her with a petition-date bank statement and a 2016 federal tax return. He failed to appear at the meeting of creditors on October 20 after leaving her a voice-mail message the prior day stating that he had disturbing news to share about the meeting and claiming in an October 23 email to her that an illness prevented him from attending the meeting or speaking with her by

---

[20] Docket item 28.
[21] Docket item 39.
[22] Docket item 43.
[23] Docket items 43-44.
[24] Docket item 50
[25] Docket item 43.
[26] Docket items 50.
[27] Docket items 62-63, 67.
[28] Docket item 71.

phone. And as of the time she filed the second motion, he hadn't provided her with returns for 2009 through 2015.

I held preliminary hearings on the second motion on November 29,[29] December 6,[30] and January 30[31] and the evidentiary hearing on May 3.[32]

### 3. The third dismissal motion

On March 13, the trustee made her third dismissal motion by causing the clerk to make a text-only docket entry of a "Motion to Dismiss Case and Notice Thereon. Reason: Debtor[s] failed to complete the Meeting of Creditors. Contd to 3/9/18."

I held a preliminary hearing on the third motion on March 20[33] and the evidentiary hearing on May 3.[34]

### 4. The fourth dismissal motion

On January 30, I granted the trustee's Motion for Order Requiring Debtor(s) to Turn Over Property and/or Recorded Information.[35] I required Geffken to provide to her proof of 2017 business and personal income for the household of six claimed in his Statement of Current Monthly Income, receipt books and check registers used for all business and personal expenses, bank statements for Key Bank account ending in 8815 or any other bank accounts used for business and personal expenses in 2017. The order was subject to any objection filed by him by February 22, but he didn't object.

On March 21, the trustee filed her fourth dismissal motion, based on her allegations of Geffken's alleged failure to comply with the turnover order, his "repeated" failures to appear for the meeting of creditors, his filing of two prior cases in 2017 that were dismissed, and his lack of candor with the court and trustee in this case, including his untrue statements at the March 20 hearing that he had previously mailed requested documents to her and that she hadn't responded to his requests or provided him with notice of the March 9 meeting of creditors.

I considered the fourth motion at the May 3 evidentiary hearing.[36]

---

[29] Docket items 39
[30] Docket item 43.
[31] Docket item 50.
[32] Docket item 71.
[33] Docket item 62.
[34] Docket item 71.
[35] Docket item 49.
[36] Docket item 71.

Jeanne E. Huffman
Carlton Bradley Geffken
July 3, 2018
Page 5

## II. Filing-fee waiver

### A. Eligibility

Under 18 U.S.C. § 1930(f), the court may waive a chapter 7 filing fee if the debtor's household income is less than 150 percent of the poverty guideline for his household size and the debtor is unable to pay the $335 fee in installments.

Geffken asserts in his application that his household size is five and in his schedules that his household size is two.[37] He testified on May 3 that his household consists of his nonspouse partner, two children of the partner from a prior marriage, and a third joint child of the debtor and the partner. He also omitted the spousal-income section of schedule I,[38] even though his application provided spousal-income information.[39]

The 150-percent monthly income amount for a household of five is $3,597.50;[40] for a household of two, it is $2,030. According to Geffken's application, his household's monthly income is $750. According to his Schedule I, it is $1,233, including a $750 SNAP benefit.[41] He is thus not income-ineligible for a fee waiver.

The trustee didn't object in writing to the application until she filed the fourth dismissal motion on March 21—over seven months later—and even that objection was not apparent from the title or opening paragraph of that motion. In it, she urged denial of the application, alleging that Geffken hadn't substantiated his financial representations required for waiver. I disagree; the household and income information in the application stands unrebutted by any record evidence.

Although Geffken's schedules and testimony contain inconsistencies, the record contains no evidence from which I could find that he is able to pay the filing fee in installments.

### B. Discretion

By providing that a court "may" waive the filing fee, Congress has made waivers discretionary. Even if a debtor is income-eligible and could not afford to pay the fee in installments, the court must consider the totality of the circumstances and can decline to grant a waiver when, for example, the debtor fails to comply with his duties under the Bankruptcy Code.[42]

Comparing Geffken's application with his schedules in this case and his application in his most recent previous case, I find that the assets, income, and expenses that he reported in those documents differ materially. His current application and schedules required information as of the August 4 petition date and so should be consistent, but they aren't. In Schedule J, he reports monthly expenses of $10,683, including many that are in round amounts of $1,000 or $500 and

---

[37] Docket item 12 at 38.
[38] Docket item 12 at 36.
[39] Docket item 5 at 1.
[40] 83 Fed. Reg. 2643-44 (Jan. 31, 2017).
[41] Docket item 12 at 37.
[42] *In re Gjerde*, 535 B.R. 329, 335 (Bankr. E.D. Cal. 2015) (denying filing-fee waiver where repeat filer had history of noncompliance and submitted inaccurate petition and schedules).

thus appear to be estimates, but his current application lists expenses of $2,600, and his prior-case application lists expenses of $4,200. His current and prior applications list as an asset a 1999 Chevrolet Suburban worth $500, but his current schedules list no vehicles. Both applications checked boxes regarding a spouse, but he testified that he is unmarried and has a nonspouse partner. Other discrepancies between his current schedules and application may be attributable to his apparent treatment of his partner as a nonspouse on Schedule I but as a spouse on the application.

These discrepancies go beyond mere inconsistency and convince me that Geffken made no effort to verify the information that he provided with his declaration that the information in his declaration is true and correct and his signature on the schedules under penalty of perjury. Granted, if he had provided in his application and schedules accurate information (treating his May 3 testimony as accurate) in an internally consistent fashion, I would have granted the waiver without setting a hearing. But by disregarding his duty to provide complete and accurate information at the outset of the case, he has disrespected the bankruptcy process and imposed substantial additional work on the court and the trustee. I set the initial hearing only due to the inconsistencies.

At several hearings, when Geffken was questioned by the trustee or me about inconsistencies in his schedules and applications, he repeatedly said that he was proceeding without the guidance of counsel, as though the forms are too complex for him, as a nonlawyer, to understand. I disagree; the forms are designed to be understood and completed accurately by a person of average intelligence and English-language fluency. Based on my discussions with him by telephone at several hearings and viewing him at the May 3 hearing, I find that he has at least average intelligence and English fluency. Only his lack of attention and care prevented him from providing accurate and internally consistent information in those documents.

I will exercise my discretion to deny his application but allow him to pay the fee in installments.

## III.   Dismissal motions

At the May 3 hearing, the trustee requested that the court grant the fourth motion to dismiss. I take that request to be an abandonment of her first through third motions to dismiss or at least her acknowledgment that the fourth motion states all unresolved grounds that she believes are supported by evidence.

### A.   *Section 707(a)*

Under 11 U.S.C. § 707(a), the court may dismiss a chapter 7 case for cause. Failing to attend the meeting of creditors can constitute cause.[43] The same is true of a debtor's failure to display candor to the court and the trustee.

But the Ninth Circuit has held that a bankruptcy court may not rely on the general category of cause if the behavior or circumstance at issue is addressed more specifically by

---

[43] *See In re Dunn*, 2010 WL 6451888, at *5 (9th Cir. B.A.P. Feb. 4, 2010).

Bankruptcy Code provisions other than section 707(a).[44] (Except as otherwise noted, section references are to title 11.)

If the complained-of conduct is eligible for consideration as cause, the court must then determine whether the circumstances are in fact cause for dismissal.

### B.   *Noncompliance with the turnover order*

Under section 727(a)(6)(A) and (d)(1), refusal to comply with a turnover order or other court order warrants denial or revocation of a chapter 7 discharge. Thus, a debtor's refusal to comply with a court order is specifically treated outside section 707(a) and may not serve as cause for dismissal.

Even if noncompliance with a turnover order could constitute cause for dismissal, the record doesn't support dismissal for Geffken's failure to comply with the turnover order. At the May 3 hearing, he testified that he didn't have any of the documents the turnover order addresses—receipt books or check registers for any personal or business expenses or any KeyBank statements. The trustee's contrary evidence consisted of her allegation, consistent with the statement in the turnover motion, that he told her at the January 25 meeting of creditors that he had those items. I observed in person his May 3 testimony, which was under oath and in response to detailed questioning by both the trustee and me, and the only evidence of his alleged January 25 statement is her May 3 recounting of it. Although I don't disbelieve her, I find that he didn't when served with the turnover order, and doesn't now, have any of the property that is the subject of the turnover order and thus that he hasn't violated that order.

### C.   *Failure to attend the meeting of creditors*

The second ground for the trustee's fourth dismissal motion is that Geffken has caused unreasonable delay that is prejudicial to creditors (a dismissal ground under section 707(a)(1)), including by repeated failures to appear for the meeting of creditors. A debtor's attendance at the meeting of creditors is required because it is crucial to the fair and efficient administration of a bankruptcy estate.

The trustee doesn't identify any way in which Geffken has delayed this case, other than his failure to attend the meeting several times. She doesn't identify which settings of the meeting he didn't attend. As described in part I.A above, in the docket she has identified only one meeting setting for which she alleges he was absent without excuse: the setting on October 20, his absence from which is the basis of the first dismissal motion.

In deciding whether that absence constitutes cause for dismissal of this case, I consider that Geffken sought, albeit unsuccessfully due to her travel, to communicate with her before the meeting about his claimed inability to attend the October 20 meeting due to illness; after October 20, the meeting was reset, either unilaterally by her or by court order, an additional four times—to January 12 and 25, March 9, and April 20; and she didn't offer evidence contradicting his explanation of illness on October 20 or establishing he failed without excuse to attend any of

---

[44] *In re Sherman*, 491 F.3d 948, 969-70 (9th Cir. 2007); *In re Padilla*, 222 F.3d 1184, 1193-94 (9th Cir. 2000).

the other settings. And, except for the information required by the turnover motion, she doesn't allege that he has failed or refused to answer her questions at the meetings.

In any case, it doesn't appear that delay has prejudiced creditors—a requirement of section 707(a)(1) dismissal. Due to Geffken's prior cases and the operation of section 362(c)(4), there hasn't been an automatic stay in this case, and the trustee hasn't contended or offered evidence that a distribution of nonexempt property to creditors is likely.

I don't find that Geffken's failure to attend the October 20 meeting or any other setting of the meeting constitutes cause for dismissal.

### D. *Prior dismissed cases*

The third ground for the trustee's fourth dismissal motion is that Geffken filed two prior cases in 2017 that were dismissed.

A debtor's prior filing history can be relevant to whether a current case was commenced in good faith. But the trustee hasn't made that argument in this case—nor has she explained why the two prior dismissals are relevant to her fourth dismissal motion, much less an independent ground for dismissal.

I don't find that the two prior 2017 cases are cause for dismissal.

### E. *Lack of candor*

The fourth ground for the fourth dismissal motion is the trustee's allegation that Geffken lacked candor with the court and the trustee, including by making untrue statements at the March 20 hearing that he had previously mailed requested documents to her and that she hadn't responded to his requests or provided him with notice of the March 9 meeting of creditors. Because she identifies no other alleged misrepresentations—including any to her alone, rather than in court—I will consider only whether the alleged false statements on March 20 constitute cause for dismissal.

In determining whether a debtor's alleged lack of candor to the court constitutes cause for dismissal of a case, I consider, among other things, whether the specific alleged misrepresentations were material to a matter under consideration by the court.

Although the misrepresentations alleged by the trustee were allegedly made at the March 20 hearing, she didn't offer at the May 3 hearing a transcript of the March hearing, but instead she offered her own recollection of Geffken's statements then. The documents that she says he falsely claimed to have mailed to her were those described in the turnover motion. Because I have found that those documents don't exist and didn't exist when the turnover motion was entered, I find that any false statements on March 20 that he mailed them to her weren't material. Likewise, I find that any false statements by him that she didn't give him notice of the March 9 meeting of creditors wasn't relevant to any issue before the court on March 20.

Neither statement, even if false, warrants case dismissal.

Jeanne E. Huffman
Carlton Bradley Geffken
July 3, 2018
Page 9

## IV. Tax returns

The fourth motion didn't allege that Geffken had failed to provide tax returns to the trustee or that the failure is cause for dismissal. The second dismissal motion did raise that issue. But I determined in part III above that the trustee had abandoned the first through third motions to dismiss by requesting at the May 3 hearing that I rule on the fourth motion.

Even if the second dismissal motion had remained pending, I wouldn't find that the record supports dismissal for failure to provide tax returns. At the May 3 hearing, the trustee said at 3:19:25 p.m. that she did receive, on December 4 or 5, the fax that Geffken claims to have sent her and thus has "the tax returns that he stated that he filed" and "I don't have any tax-return issues for this hearing;" and at 3:49:06 p.m., she said that "I confirm that I have the tax returns that were requested" and that the documents she should have, but hasn't, received are those listed in the turnover order, which she wants in order to determine 2017 income and expenses. Although the record also includes other assertions by her that she hadn't received the fax that he claims to have sent her in April with the state returns for 2015 and 2016, I would find that her confirmation of receipt of all requested tax returns forecloses any relief on that ground.

In view of the contradictory testimony regarding whether Geffken had sent the trustee copies of the 2015 and 2016 state returns, at the conclusion of the hearing, I orally ordered him to mail to her by May 4 copies of those returns. On May 14, the trustee filed a letter asserting that she hadn't yet received from him a copy of the 2016 state return (making no reference to the 2015 state return).[45] Because that letter was filed after the close of the record for the May 3 hearing and in any case asserts an omission that occurred after that hearing, I don't consider it when ruling on the fourth dismissal motion. My decision not to grant the fourth motion is without prejudice to any relief that she may request based on acts or omissions occurring after that hearing.

## V. Conclusion

I will prepare and enter orders deny the fee-waiver application and the motions to dismiss.

Sincerely,

David W. Hercher

DAVID W. HERCHER
Bankruptcy Judge

---

[45] Docket item 73.